IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| DYAN BOWMAN, | ) | C/A 3:06-1648-CMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| HOLOPACK INTERNATIONAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| HOLOPACK INTERNATIONAL CORPORATION, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| -versus- | ) | |
| | ) | |
| DYAN BOWMAN, | ) | |
| | ) | |
| Counter Defendant, | ) | |

This action has been filed by the Plaintiff asserting claims under both federal and state law. Plaintiff is a former employee of the Defendant Holopack International Corporation.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 16, 2007. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on August 17, 2007, following which Defendant filed a reply memorandum on August 31, 2007. Defendant's motion is now before the

1



Court for disposition.[1]

### Background and Evidence[2]

Plaintiff was hired by the Defendant to be its Human Resources Administrator in September 2004. <u>Plaintiff's Deposition</u>, pp. 34-38. Plaintiff signed an employment agreement which provided, in part, that she would receive a salary of $38,500.00. <u>Plaintiff's Deposition</u>, pp. 40-41; <u>Deposition Exhibit 3</u>. Plaintiff's primary duties included the processing and administration of payroll and the administration of employee benefits programs, although she also performed other functions. <u>Plaintiff's Deposition</u>, pp. 45, 47, 251; <u>Deposition Exhibit 4</u>. Plaintiff, an African-American, was supervised by Lori Wedemyer (white), the Defendant's Human Resources Director. <u>Plaintiff's Deposition</u>, p. 47. Wedemyer was in turn supervised by Walter Zahn (white), President of the Company. <u>Wedemyer Deposition</u>, p. 10.

Plaintiff's predecessor as Human Resources Administrator was April Maiden (white). Maiden had left the Defendant's employ when she moved out of state. <u>Wedemyer Deposition</u>, pp. 13-15. Plaintiff testified that several employees with the Defendant, including Wedemyer and President Zahn, made positive comments regarding her job performance as compared to how Maiden had performed the HR Administrator job. <u>Plaintiff's Deposition</u>, pp. 76-79, 218. Wedemyer testified at her deposition that she was equally happy with both employees, although she acknowledged that

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



Maiden had made some mistakes during her period of employment.  Wedemyer Deposition, pp. 23-24, 194-195.

In the summer of 2005, Wedemyer received an email from Maiden informing her that she was returning to South Carolina. Wedemyer Deposition, p. 28.  Around that same period of time, Zahn asked Wedemyer to assume additional responsibilities as his assistant.  Plaintiff's Deposition, p. 60.  Wedemyer had in turn asked Plaintiff to assume some of her HR responsibilities.  Plaintiff asked Wedemyer if that meant she would receive additional benefits, such as a promotion or more money, and Wedemyer said no. Plaintiff testified she did not tell Wedemyer that she would not perform these extra duties without extra benefits. See generally, Plaintiff's Deposition, pp. 60-68.  However, Wedemyer testified that, as a result of her conversation with the Plaintiff, she believed that Plaintiff was not interested in taking on additional responsibilities in the HR Department without additional benefits.  Wedemyer Deposition, pp. 27-28.

Wedemyer subsequently contacted Maiden about whether she would be interested in coming back to work for the Defendant, and a decision was made to hire Maiden for a newly created position called "HR Specialist".  Wedemyer Deposition, pp. 27-29.   When Plaintiff found out that Maiden was returning to work and would be making the same salary as Plaintiff,[3] she complained to Wedemyer that that was unfair and questioned whether Maiden's "skin color" had anything to do with the Defendant's salary decision. Plaintiff's Deposition, pp. 98-99.[4] Plaintiff testified that

---

[3]By the summer of 2005, Plaintiff had received raises bringing her annual salary to $45,000.00.  Plaintiff's Deposition, Exhibit 15.

[4]While Wedemyer testified that Plaintiff never brought up the issue of race in this conversation; see Wedemyer Deposition, p. 41; for purposes of summary judgment, the undersigned has assumed Plaintiff's version of this conversation to be correct.

3



Wedemyer told her she would just have to "deal with it." Plaintiff's Deposition, p. 94.

On January 9, 2006, Plaintiff applied for leave under the Family and Medical Leave Act (FMLA) in order to care for her mother, who was ill. Plaintiff would only be taking off from time to time, when needed by her mother. Plaintiff's Deposition, p. 139; Deposition Exhibit 14. Plaintiff testified that Wedemyer asked her how much time she was going to be away and who was going to handle her responsibilities while she was gone. While Plaintiff did not believe there was anything wrong with these questions, she testified that Wedemyer posed these questions to her in an offensive way. Plaintiff's Deposition, pp. 141-142. Nevertheless, Plaintiff's request was approved, following which Plaintiff took approximately 36 hours of FMLA leave during the month of January. Plaintiff's Deposition, p. 141; Plaintiff's Deposition Exhibit 14. During that period of time, Wedemyer spoke with Plaintiff concerning a mistake that had been made in payroll during Plaintiff's absence on FMLA leave. Plaintiff's Deposition, pp. 143, 200; Wedemyer Deposition, pp. 57, 60, 62, 64, 88, 136; Wedemyer Deposition, Exhibit 20, Bates No. 980.

During a senior management team meeting on January 19 and 20, 2006, the functioning and operation of the HR Department was discussed, and it was decided to move the payroll function currently located in the HR Department to the Accounting Department. Wedemyer Deposition, pp. 71-72. See Plaintiff's Deposition, Exhibit 18. Wedemyer testified that the management team concluded that 75% of the HR Administrator's (Plaintiff's) time was spent on payroll, while only 25% was spent on benefits, and that the 25% of Plaintiff's duties remaining in the HR Department should be transferred from her to the HR Specialist (Maiden). Wedemyer Deposition, p. 72, 207. As a result of this decision, Plaintiff's HR Administrator position was eliminated. Wedemyer Deposition, pp. 81-82.

4



On January 24, 2006, Wedemyer informed Plaintiff that the Defendant had made a decision to eliminate her job. Plaintiff's Deposition, pp. 161-162. Plaintiff's original employment agreement provided for three (3) months severance pay as long as Plaintiff was not terminated for cause, among other provisions including execution of a release. Plaintiff's Deposition, Exhibit 3. However, upon notification that her position was being eliminated, Plaintiff was provided with a separation package and release which would have provided four (4) months severance pay in return for the signed release. Plaintiff's Deposition, pp. 162-163; Plaintiff's Deposition, Exhibit 19. Plaintiff offered to sign the release if the agreement was changed to provide her with nine (9) months severance pay and other benefits; however, the Defendant declined Plaintiff's counter offer. Plaintiff's Deposition, p. 172; Plaintiff's Deposition Exhibits 20 & 21.  Plaintiff then provided her own release, which the Defendant rejected.  Plaintiff's Deposition, p. 178; Plaintiff's Deposition Exhibit 22; Wedemyer Deposition, p. 125; Knight Deposition, p. 10.  Following her termination, Plaintiff received no severance pay.

In this lawsuit, Plaintiff asserts five (5) claims against the Defendant, as follows: denial and interference with benefits Plaintiff was entitled to under the FMLA (first cause of action); retaliation against the Plaintiff for exercising her rights under the FMLA (second cause of action); breach of contract (third cause of action); violation of the South Carolina Wage Payment Act (fourth cause of action); and retaliation for complaining about racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and 42 U.S.C. § 1981 (sixth cause of action)[5].

_____

[5]Plaintiff also originally included a claim in her Complaint (fifth cause of action) for racial discrimination in violation of Title VII and § 1981.  However, Plaintiff concedes she has no evidence
(continued...)



## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (FMLA Claims)

The Family and Medical Leave Act provides that covered employees are entitled to a total of twelve (12) work weeks of leave during any twelve (12) month period for family and health related matters, as well as a right to be restored to the position of employment held by the employee when the leave commenced, or to an equivalent position. 29 U.S.C. §§ 2612, 2614. The FMLA also protects employees from discrimination or retaliation for exercising their rights under that statute. 29 U.S.C. § 2615(a)(1) and (2).

Defendant does not dispute for purposes of summary judgment that it meets the criteria for being an "employer" under the Act, and that Plaintiff was a covered employee entitled to FMLA leave. Defendant does contest, however, that it ever denied Plaintiff FMLA benefits to which she was entitled, or otherwise interfered with her FMLA rights or retaliated against her for

---

[5](...continued)
to support this claim, and has therefore withdrawn this cause of action. <u>Plaintiff's Brief</u>, at p. 1.



exercising those rights.

**Interference with rights under the FMLA.**  Under the FMLA, an employee has a "right to take a certain amount of unpaid medical leave each year and the right to reinstatement following such leave."  <u>Taylor v. Progress Energy, Inc.</u>, 493 F.3d 454, 457 (4th Cir. 2007). Plaintiff does not claim that she was denied the right to take unpaid medical leave in this case.  Rather, Plaintiff argues that the Defendant failed to restore or reinstate her to her position following her taking of FMLA leave.  Defendant argues that Plaintiff has no claim that it failed to restore or reinstate Plaintiff to her position because she never left her position.

The record reflects that Plaintiff was out of work on FMLA leave on January 10 - January 13, and for a partial day on January 18.  Plaintiff was at work at her job on January 24, 2006, when she was informed that her job was being eliminated. <u>Plaintiff's Deposition, Exhibit 14</u>.  Hence, the evidence does not show that the Defendant failed to restore or reinstate Plaintiff to a job she had left, because she was at work performing her job at the time she was advised of her termination.  However, Plaintiff can still succeed on her FMLA claim if the evidence shows that the Defendant's decision to terminate her and eliminate her position was motivated by her taking FMLA leave. <u>Liu v. Amway Corp.</u>, 347 F.3d 1125, 1135 (9th Cir. 2003) ["[W]here an employee is subjected to negative consequences simply because he has used FMLA leave, the employer has interfered with the employee's FMLA leave rights"].  If her leave was not the reason she was terminated (i.e., if her position would have been eliminated even if she had never been out on leave), then Plaintiff's termination does not state a claim under the FMLA.  *Cf.* <u>Vargas v. Globetrotters Eng. Corp.</u>, 4 F.Supp.2d 780, 783 (N.D.Ill. 1998)[Secretary had no right to reinstatement to field secretary position because it had been eliminated before she returned from leave]; <u>Ilhardt v. Sara Lee Corp.</u>, 118 F.3d



1151, 1157 (7th Cir. 1997)[Plaintiff not allowed to return from leave because her position was eliminated in a reduction-in-force]; Campbell v. Gambro Healthcare, Inc., 447 F.Supp.2d 1205, 1213-1215 (D.Kan. 2006); Patterson v. Alltel Information Services, Inc., 919 F.Supp. 500, 505, n. 10 (D.Maine 1996); Blankenship v. Buchanan General Hospital, 140 F.Supp.2d 668, 673 (W.D.Va. 2001).

It could be argued, of course, that Plaintiff's job being eliminated because she exercised her leave rights under the FMLA sets up a classic retaliation scenario, and that Plaintiff's "interference" claim should therefore be dismissed, with her claim instead being evaluated solely under her "retaliation" cause of action. However, the caselaw appears to allow both an interference and a retaliation claim to go forward based on the facts presented. *Cf.* Reid v. Smithkline Beecham Corporation, 366 F.Supp.2d 989, 998 (S.D.Cal. 2005) [holding that claim that employee was terminated for requesting and taking FMLA protected leave properly analyzed as an interference cause of action]; Miller v. Pilgram's Pride Corporation, No. 5-05-cv-64, 2007 WL 2007548, at * (W.D.Va. July 6, 2007) [holding that taking FMLA leave can be a protected activity sufficient to establish an FMLA retaliation claim]; Blankenship, 140 F.Supp.2d at 672 ["[T]he courts have recognized that the FMLA also provides a cause of action for retaliatory discharge for receiving FMLA leave."]. However, the framework for analyzing interference and retaliation claims under the FMLA is different. While, to establish a retaliation claim, a Plaintiff must proceed (absent direct evidence) through the framework for analyzing retaliation claims under Title VII; see Dodgens v. Kent Manufacturing Company, 955 F.Supp. 560, 565-566 (D.S.C. 1997); see also discussion of FMLA retaliation claim, infra; to proceed with her interference claim, Plaintiff need only prove by a preponderance of the evidence that her taking of FMLA protected leave "constituted a negative

8



factor in the decision to terminate her." <u>Reid</u>, 366 F.Supp.2d at 998. If there is a triable issue of material fact regarding whether the Defendant impermissibly considered Plaintiff's FMLA leave when terminating her, summary judgment is inappropriate. <u>Id</u>, at 999. Plaintiff has met this standard in this case.

        The evidence before the Court, considered in the light most favorable to the Plaintiff, shows that when Plaintiff requested FMLA leave Wedemyer responded by asking Plaintiff how much time it was going to take her away from work and who was going to do her responsibilities if she was not there. Plaintiff testified that Wedemyer's comment was "just offensive the way it was put. It was like who is going to do your job if you are not here." <u>Plaintiff's Deposition</u>, pp. 141-142. Plaintiff testified that at that time the Defendant "had issues with other people not working....there were other people on leave away from work and being paid", and that Zahn may have been upset about that. <u>Plaintiff's Deposition</u>, pp. 145-146. Plaintiff was then out on leave January 10- January 13, during which a payroll error was committed which Wedemyer appears to have attributed to the fact that Plaintiff was out of the office. <u>Wedemyer Deposition, Exhibit 20</u>, Bates No. 980. Plaintiff then took another day of partial leave on January 18, following which the operation of the HR Department was the subject of a discussion during a management meeting on January 20. It was at this management meeting that the Defendant decided to transfer the payroll function out of the HR Department to the Accounting Department. The remaining responsibilities were then given to Maiden, who remained employed in the HR Department, and Plaintiff's job was eliminated. <u>Plaintiff's Deposition, Exhibit 18</u>. This decision was made by Zahn and Wedemyer. <u>Wedemyer Deposition</u>, p .71; <u>Zahn Deposition</u>, pp. 41-43.

        While Wedemyer initially testified that the elimination of Plaintiff's position was "not



about money", but was how the HR Department could be more effectively organized, she subsequently testified that it was a "cost savings". <u>Wedemyer Deposition</u>, p. 81. However, other employees received raises due to their absorption of Plaintiff's duties. <u>Wedemyer Deposition</u>, pp. 80, 89. In any event, since Maiden had been re-hired at Plaintiff's salary, the same cost savings could have been achieved by retaining the Plaintiff and letting Maiden (the more recent hire) go. The Defendant retained Maiden instead. Further, when Maiden subsequently left her job with the Defendant just a few months later, in March 2006, the Defendant did not contact Plaintiff about this opening, even though she had received a good employee evaluation in December 2005 (prior to requesting FMLA leave) and had only recently been laid off, and instead advertised for the opening in its HR Department. <u>Wedemyer Deposition</u>, pp. 93, 102-103, 185-187. Wedemyer testified that it was Company policy not to rehire former employees; <u>Wedemyer Deposition</u>, at p. 99; although employees who had left on good terms had been brought back or re-hired before - including April Maiden. <u>Id</u>, pp. 99-101. Plaintiff had left on good terms, but Wedemyer did not even consider bringing her back. <u>Id</u>, pp. 102-103.

While this evidence is far from conclusive that the reason Zahn and Wedemyer made the decision they did was because they were mad at the Plaintiff for having taken leave time during a period when Zahn was already upset about people taking leave, and then because of a payroll foul-up while Plaintiff was on her leave, it may be sufficient for a reasonable fact finder to infer that the decision was motivated by Plaintiff having requested and taken protected FMLA leave. <u>Reid</u>, 366 F.Supp.2d at 998; <u>Blankenship</u>, 140 F.Supp.2d at 675; <u>Muhammad v. Klotz</u>, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient



disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986). Therefore, Defendant's motion for summary judgment with regard to Plaintiff's FMLA interference claim should be denied.

          **FMLA retaliation claim.**  The FMLA guarantees Plaintiff the right not to be discriminated or retaliated against for exercising her substantive FMLA rights.  29 U.S.C. §§ 2615(a)(2), 2615(b); Taylor, 493 F.3d at 457. As previously noted, a retaliation claim under the FMLA is analyzed under the same standards as are applied to a Title VII retaliation claim. Dodgens, 955 F.Supp. at 565-566 [appropriate analysis for retaliatory discharge under FMLA is that provided for Title VII for retaliatory discharge].[6]

          Pursuant to this standard, "[t]he employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence.  Such a prima facie case consists of three elements:  (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997); Blankenship, 140 F.Supp.2d at 674.  Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions.  If the employer can

---

      [6]This would apparently include claims that an employer fired an employee for taking FMLA leave, even though that would seem to be the same claim just discussed as an "interference" claim. Blankenship, 104 F.Supp.2d at 672 ["E]mployees cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions....Based on this, the courts have recognized that the FMLA also provides a cause of action for retaliatory discharge for receiving FMLA leave."].



produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural. Id. ; Nichols v. Ashland Hospital Corporation, 251 F.3d 496, 502 (4th Cir. 2001).

It is undisputed that Plaintiff engaged in protected activity by exercising her rights under the FMLA, and that the Defendant took adverse action against her when it terminated Plaintiff from her job. With respect to whether there was a causal connection between these two events, while not conceding this point, Defendant acknowledges that a "temporal proximity" between protected activity and an adverse employment action (as is the case here) may be sufficient to establish this third prong of Plaintiff's prima facie case. See Heady v. US Enrichment Corp., 146 Fed.Appx. 766, 770-771 (6th Cir. 2005) ["[T]emporal proximity is sufficient to meet the low burden required to establish a prima facie case of retaliation in violation of the FMLA...."]; see also Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Gordon v. Southern Bells, Inc., 67 F.Supp.2d 966, 988 (S.D.Ind. 1999)["A short time span between protected activity and an adverse employment action may be sufficient to prove a causal connection between the two events. . . . A close temporal connection between the two events is generally enough to satisfy the third element of the prima facie case."]; Jones v. City of Elizabeth City, North Carolina, 840 F.Supp. 398, 403 (E.D.N.C. 1996), aff'd., 2 F.3d 1149 (4th Cir. 1993). Therefore, the undersigned finds for purposes of Defendant's summary judgment motion that Plaintiff has submitted sufficient evidence to establish her retaliation prima facie case. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) [the burden of establishing a prima facie case is not onerous].



The Defendant has presented evidence to show that as a result of declining profits, it had been eliminating positions with the company, and that as a result of a decision by the Defendant's senior management team in January 2006, the payroll duties previously performed by the HR Administrator were transferred to the Accounting Department, the result of which was that Plaintiff's position was no longer needed.  See generally, Zahn Deposition, pp. 39-43; Plaintiff's Deposition, Exhibit 18; Wedemyer Deposition, pp. 71-72, 81-82.  This evidence is sufficient for the Defendant to meet its burden of production to show a legitimate, non-discriminatory reason for its actions.  See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden is only one of production, not of persuasion].  Therefore, the Court must turn to the issue of whether sufficient evidence of pretext has been presented for Plaintiff to survive summary judgment on this claim.

In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to retaliate against her because she exercised her leave rights under the FMLA, she would not have lost her job.  EEOC, 955 F.2d at 941; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234 (4th Cir. 1991). Discerning an employer's motives in a case like this is always difficult, as it is the rare employer who is so unwise as to make incriminating statements concerning its motivation so as to provide a plaintiff with concrete evidence to support their claim.  Thus, the law provides that evidence derived from circumstances and inferences may be used to support a claim of retaliation. LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993) ["Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'"](citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell

13



v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991));

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

Pursuant to the evidence previously discussed, supra, in the light most favorable to the Plaintiff, the undersigned concludes that Plaintiff has produced sufficient evidence to create an issue of fact as to the Defendant's proffered legitimate reasons for her termination, whether Zahn and Wedemyer made the decision they did because they were mad at the Plaintiff for having taken leave time during a period when Zahn was already upset about people taking leave, and then because of a payroll foul up while Plaintiff was on her leave, to defeat summary judgment on this claim. LeBlanc, 6 F.3d at 843 ["direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole...must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus]'"]; Reeves, 530 U.S. at 141-143 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; Anderson, 477 U.S. at 255 [at summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"]. Therefore, Defendant's motion for summary judgment with regard to Plaintiff's FMLA retaliation claim should be denied.

## II.

### (Retaliation Claim under Title VII and § 1981)

Plaintiff also alleges that her termination was the result of retaliation by the Defendant after she complained that race was a factor in Maiden's hiring and salary. Plaintiff asserts this claim under both Title VII and § 1981.



The standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002) ["In analyzing a claim...under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).[7] Under Title VII and § 1981, the protected activity Plaintiff must have engaged in is complaining about unlawful racial discrimination, as opposed to exercising her leave rights under the FMLA. The other criteria remain the same. Williams, 871 F.2d at 457; Munday, 126 F.3d 242.

Defendant initially argues that Plaintiff cannot establish that she engaged in protected activity, arguing that her complaint to Wedemyer about Maiden being brought back to work for the company for the same salary she was making does not constitute opposition to "any practice made an unlawful employment practice....".  42 U.S.C. § 2000e-3(a); see also Jordan v. Alternative Resources Corp., 458 F.3d 332, 338-339 (4th Cir. 2006) [defining "unlawful employment practices" as practices that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race"].  Defendant argues that Plaintiff was not complaining about her terms of employment, but was instead complaining about the terms of employment for someone else (Maiden), which does not amount to protected activity under Title VII or § 1981.  The undersigned does not agree.

---

[7] The main difference between Title VII claims and claims brought under § 1981 is that individual liability is possible under § 1981; Dalton v. Jefferson Smurfit Corp., 979 F.Supp. 1187, 1201-1203 (S.D.Ohio 1997); cf. Lissau v. Southern Foods Serv., Inc., 159 F.3d 177, 180-181 (4th Cir. 1998); although no individual liability is asserted in this case.



There are essentially two types of protected activity an employee can engage in to fall under the protection of the federal employment discrimination laws: activity under the "opposition clause" and activity under the "participation clause". The participation clause provides protection for an employee filing a claim with the EEOC; Laughlin v. Metropolitan Washington Airports Authority, 952 F.Supp. 1129, 1133 (E.D.Va. 1997), aff'd.149 F.3d 253 (4th Cir. 1998); while the opposition clause encompasses informal protests, such as voicing complaints to supervisors or using an employer's grievance procedures. Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Plaintiff's retaliation claim in the case at bar falls under the opposition clause, because it arises out of Plaintiff's internal complaints to her supervisors, and not out of any filing with the EEOC. See Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1313 (6th Cir. 1989); Morris v. Boston Edison Co., 942 F.Supp. 65, 71 (D.Mass. 1996). The evidence (considered in the light most favorable to the Plaintiff) reflects that, after Plaintiff learned that Maiden was coming back to work for the Defendant and what her salary was going to be, she spoke to Wedemyer about Maiden making the same amount of money as her even though she was being hired in a subordinate position and complained that the fact that she was black and Maiden was white might have played a role in this decision. Plaintiff's Deposition, pp. 94-96, 98-100, 102-106, 112-113.[8] Considered in the light most favorable to the Plaintiff, the evidence that Plaintiff made such a complaint is sufficient evidence of a protected activity to support a retaliation claim; Armstrong, 647 F.2d at 448; and  Defendant's argument that Plaintiff's Title VII/1981 retaliation claim fails because Plaintiff

---

[8]For purposes of a retaliation claim, it is not necessary that the complaint voiced by the employee be true (i.e., that Plaintiff and Maiden's respective salaries were based on their race), but only that the evidence shows that Plaintiff believed this may have happened and made this complaint to her supervisors. Mason v. Caterpillar, Inc., 359 F.3d 885, 890 (7th Cir. 2004).



never engaged in protected activity is therefore without merit.

With respect to the remainder of Plaintiff's prima facie case, Defendant also argues that no causal connection has been shown between any protected activity and Plaintiff's termination. Again, the undersigned does not agree. The evidence reflects that Plaintiff first complained about possible racial discrimination or disparity in treatment in the summer of 2005. Prior to that time, Plaintiff had had no employment problems and in fact as of June 1, 2005, had received two pay increases raising her salary from $38,500 to $45,000. <u>Plaintiff's Deposition, Exhibit 15</u>. However, Plaintiff testified that, thereafter, Wedemyer basically allowed Maiden to act as Plaintiff's supervisor, including checking Plaintiff's work. <u>Plaintiff's Deposition</u>, pp. 212-213, 236, 244. Further, in her annual performance evaluation completed in December 2005 (after Plaintiff had engaged in protected activity), Plaintiff received "exceeds expectations" ratings (or above) in all areas of job performance except in the areas relating to her willingness to work "positively" and with respect to her "attitude". In those areas Plaintiff was rated only as "meets expectations". <u>Plaintiff's Deposition, Exhibit 8</u>. Plaintiff was told she had received a lower rating for her "attitude" because of her "reaction to bringing [Maiden] on board." <u>Plaintiff's Deposition</u>, pp. 74-75.

The very next month, Wedemyer and Zahn decided to transfer most of Plaintiff's responsibilities to the Accounting Department, retain Maiden (the employee about whom Plaintiff had complained) to perform the remainder of Plaintiff's job duties, even though Maiden was the newer hire, and terminate Plaintiff's employment. Then, when Maiden resigned a couple of months later, the Defendant did not consider rehiring Plaintiff and did not even contact her, even though she had received an overall "exceeds expectations" job review in December 2005, but instead sought other applicants for the now vacant HR position. As previously noted, Wedemyer testified that the

17



Defendant's policy was not to re-hire former employees, even though Maiden had herself been a re-hire.  Finally, the Defendant also wanted Plaintiff to sign a release that would have waived all claims she may have had arising out of her termination, including potential discrimination claims, and when she failed to do so the Defendant refused to provide her with any severance pay.[9]

Considered in the light most favorable to the Plaintiff, this evidence is sufficient to establish a causal connection as well as pretext to avoid summary judgment on this claim.  Reeves, 530 U.S. at 141-143 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to raise an inference that the employer's asserted justification for the employment decision is false, the trier of fact can conclude that the employer unlawfully

---

[9]Plaintiff argues that the Defendant's failure to provide her with her termination benefits was retaliatory because the Defendant was specifically requiring her to release any potential discrimination claims she might have before she could receive these benefits, which she refused to do. See Plaintiff's Deposition, Exhibit 19 . An employer's withholding of benefits from an employee can under some circumstances constitute retaliatory conduct. Cf. EEOC v. Lockheed Martin Corp., 444 F.Supp.2d 414, 418-420 (D.Md. 2006) [retaliation can be shown by employer conditioning award of severance benefits on employee's waiver of any possible EEOC claims]; Carney v. The American University, 151 F.3d 1090, 1095 (D.C.Cir. 1998) [withholding benefits to which an employee is otherwise entitled amounts to just the sort adverse personnel action that can support a retaliation claim]; EEOC v. Cosmair, Inc., L'Oreal Hair Care Div., 821 F.2d 1085, 1089 (5th Cir. 1987) ["clearly if [the employer] stopped providing [the employee] benefits to which he was otherwise entitled simply because he filed a charge, the company would be guilty of retaliation"]. However, to constitute a claim for retaliation the evidence must show that the employer's refusal to provide benefits was a result of a retaliatory animus, and not for other reasons. Cf. Paquin v. Federal Nat'l Mortgage Association, 119 F.3d 23, 32 (D.C.C. 1997).  [no causal connection where adverse action (withdrawal of severance package) was not caused by protected activity]; Montague v. The Oakwood Club, Inc., No. 81370, 2003 WL 549927, at *4 (Ohio Ct.App. 2003) [failure of employer to pay severance pay or benefits to an employee who refuses to sign a severance agreement does not constitute an adverse employment action as a matter of law]; see Jackson v. Lyons Falls Pulp & Paper, Inc., 865 F.Supp. 87, 95 (N.D.N.Y. 1994) [employer's refusal to provide benefits and severance pay to former employee after employee refused to sign separation agreement was not unlawful retaliation under the ADEA]; Cronin v. ITT Corp., 737 F.Supp. 224, 231 (S.D.N.Y. 1990) [no retaliation where former employee refused to sign release]; cf. Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1484 (4th Cir. 1996) [ERISA case]. See also, Section III of this Report and Recommendation, infra [discussing Plaintiff's breach of contract claim].



discriminated]; Hunt-Golliday, 104 F.3d at 1014 [suspicious timing constitutes circumstantial evidence to support a claim of discrimination]. While there certainly is evidence in the file to support the Defendant's claim that it had a valid reason for the employment decision taken, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that the actions taken were the result of a retaliatory animus. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997); Anderson, 477 U.S. at 255 [at summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"]; see LeBlanc, 6 F.3d at 843 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable factfinder to infer that the employer's decision...was motivated by [retaliatory animus]"]; cf. Price v. Thompson, 380 F.3d 209, 212-213 (4th Cir. 2004) [knowledge of a protected activity in a retaliation case may be established through circumstantial evidence even where knowledge is denied by the person who took the adverse employment action]. Therefore, Defendant's motion for summary judgment with respect to Plaintiff's Title VII/§ 1981retaliation claim should be denied.

### III.

### (Breach of Contract Claim)

Plaintiff claims that the Defendant breached its employment contract with her when it refused to provide her with three months of severance payments as provided by her employment agreement. See Plaintiff's Deposition, Exhibit 3, ¶ 6(a). Defendant argues that it was not required to provide these payments because Plaintiff refused to sign a release at the time of her termination, which was also a requirement of her employment agreement. Id, ¶ 6(C).

South Carolina is an employment at-will state, and when an employee is an employee

19



at-will, either party has the right to terminate the employee relationship any time, for any reason or for no reason at all, without incurring liability.  Horton v. Darby Elec. Co., Inc., 599 S.E.2d 456, 460 (S.C. 2004); Dodgens v. Kent Manufacturing Co., 955 F.Supp. 560, 566 (D.S.C. 1997); Ludwig v. This Minute of Carolina, Inc., 337 S.E.2d 213, 214-215 (S.C. 1985).  However, this at-will status can be altered by the creation of a contract between the employee and employer, and it is undisputed that there was an employment contract executed by the parties in this case.  Plaintiff's Deposition, Exhibit 3.  While that contract provided that Plaintiff's employment was at-will; i.e., that it could be terminated by either party for any reason or no reason at all, it did also contain contractually binding language relating to the providing of severance payments conditioned on the signing of a release.

To avoid summary judgment on her breach of contract claim, Plaintiff must have evidence to show a breach or unjustifiable failure to perform the relevant provisions of this contract by the Defendant, as well as damages caused by such breach.  Fuller v. Eastern Fire & Casualty Insurance Co., 124 S.E.2d 602, 610 (S.C. 1962).  There is no such evidence in this case.  Pursuant to Plaintiff's employment agreement, in order to obtain three months severance payments she was obligated to sign a release releasing the Defendant "from all claims of any nature and kind relating to [her] employment with the [Defendant], or the termination thereof...."   Plaintiff's Deposition, Exhibit 3, ¶ 6(C).  It is undisputed that Plaintiff refused to sign a full and complete release of any and all claims at the time of her termination, and she even testified that she did not do so because she did not want to give up her right to file a lawsuit over her termination.  Plaintiff's Deposition, p. 164.

Obviously, Plaintiff was under no obligation to sign the Defendant's proposed release of her claims.  However, after she failed to do so, the Defendant was under no obligation to provide severance payments to her in light of her refusal to do so.  Wagner v. Nutrasweet Co., 95 F.3d 527,



531-534 (7th Cir. 1996) [An employer may require employees to sign releases as a condition for receiving severance benefits]; *cf.* <u>Kaul v. Hanover Direct, Inc.</u>, 148 Fed.Appx. 7 (2nd Cir. 2005); <u>Kirkland v. St. Elizabeth Hospital Medical Center</u>, 34 Fed.Appx. 174, 178-179 (6th Cir. 2002); <u>Cronin v. ITT Corp.</u>, 737 F.Supp. 224, 230-231 (S.D.N.Y. 1990); <u>Taylor</u>, 493 F.3d at 460-461 [distinguishing waiver of Title VII claim from waiver of FMLA claim]. Plaintiff's breach of contract claim is without merit and should be dismissed.

### IV.

### (Claim Under the South Carolina Payment of Wages Act)

Plaintiff has also asserted a claim under the South Carolina Payment of Wages Act; <u>see</u> S.C.Code Ann. § 41-10-10, <u>et.</u> <u>seq.</u>; which creates a cause of action against an employer by an employee for failure of the employer to pay wages as required under that Act. S.C.Code Ann. § 41-10-80(C). Specifically, the Act provides that employers "shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular pay day which may not exceed thirty days." S.C.Code Ann. § 41-10-50.

Plaintiff claims that the Defendant has violated this Act by its failure to pay her the severance payments due and owing under her employment agreement. However, for the reasons set forth in Section III of this Report and Recommendation, <u>supra</u>, Plaintiff is not entitled to any severance payments from the Defendant under her employment agreement, because she failed to sign the release required by that agreement. Further, severance payments do not constitute wages under the South Carolina Payment of Wages Act. <u>Osborne v. University Medical Associates</u>, 278 F.Supp.2d 720, 741 (D.S.C. 2003). Plaintiff has no claim for payment of this money. Therefore, her cause of action under the South Carolina Payment of Wages Act should be dismissed.

21



**Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted** with respect to Plaintiff's third cause of action (for breach of contract) and fourth cause of action (for violation of the South Carolina Payment of Wages Act), and that those causes of action be **dismissed**. As previously noted, Plaintiff has withdrawn her fifth cause of action for race discrimination.

It is further recommended that the Defendant's motion for summary judgment with respect to Plaintiff's first cause of action (for violation of the FMLA), second cause of action (retaliation in violation of the FMLA) and sixth cause of action (retaliation in violation of Title VII and § 1981) be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

November 15, 2007

22

