IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Dyan Bowman, ) | C.A. No. 3:06-1648-CMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | OPINION AND ORDER |
| ) | ON MOTION FOR |
| ) | SUMMARY JUDGMENT |
| Holopack International Corporation, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court for review of the Report and Recommendation ("Report") entered on November 15, 2007. For the reasons set forth below, the recommendations of the Report are adopted and summary judgment is granted as to the claims for breach of contract and violation of the South Carolina Wage Payment Act. One of the remaining claims (the race discrimination claim) has been withdrawn. The remaining claims shall proceed to trial during the February term of this court pursuant to the schedule set forth at the conclusion of this order.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that

there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**FACTS**

Taken in the light most favorable to Plaintiff, the central facts are as set forth below. The court, however, also adopts as its own the statement of facts contained in the Report except as modified in the remainder of this order.[1]

Plaintiff was hired by Defendant as a Human Resources Administrator in September 2004. Her position was eliminated and she was terminated in January 2006. The termination was not a result of any deficiency in Plaintiff's performance. She had, in fact, received several raises during her tenure including one based on a positive performance evaluation given in December 2005.

In her December 2005 evaluation, Plaintiff was rated as exceeding expectations in most areas of her performance. She was given a satisfactory, but lower rating of "meets expectations" in several areas. When she asked why she received these lower ratings, she was told that it was because of her reaction to the hiring of April Maiden in August of 2005. Ms. Maiden had been hired into a newly created position at that time. Plaintiff had complained that Maiden was rehired at the same rate Plaintiff was then being paid, which included two raises from the rate Plaintiff was paid when hired less than one year prior. When Plaintiff made this complaint, she suggested, albeit somewhat offhandedly, that the reason might be the color of her skin, relative to Maiden's.

---

[1] The present statement of "central" facts is included both as a supplement to the Report's statement of facts and to explain why the factual errors suggested by Defendant in its objections would not support judgment in its favor at this stage in the proceedings.

2

Plaintiff did not believe equal pay was warranted for a variety of reasons including that she had, since coming on board, heard some negative comments about Maiden's work, at least relative to her own. In addition, Plaintiff understood that the company had a policy of not rehiring former workers. Plaintiff was also aware that Maiden had been working for about $10,000 less prior to leaving the company and, apparently, had less formal training than Plaintiff.

On January 9, 2006, less than a month after receiving the positive job evaluation, Plaintiff requested and received approval to take intermittent leave under the Family Medical Leave Act. The purpose of the leave was to care for her mother who was undergoing cancer treatments. The only arguably negative comments made in relation to this leave were questions from Plaintiff's supervisor who asked who would perform Plaintiff's work while she was out. Plaintiff testified in her deposition that there was something offensive in the tone or phrasing of this question, although she provided no specifics. Plaintiff also testified that her supervisor called her while Plaintiff was at the hospital with her mother, and that the supervisor was upset about a payroll problem that had arisen while Plaintiff was out.[2]

The decision to eliminate Plaintiff's position was made by Plaintiff's immediate supervisor and the company president during a management meeting held on January 18-19, 2006. Plaintiff was informed of the decision on January 24, 2006.

According to Defendant, the decision to eliminate Plaintiff's position resulted from an ongoing strategic plan to streamline the company. Thus, it is Defendant's position that it was a

---

[2] The supervisor claims the only call relating to the payroll problem was one initiated by Plaintiff and that it was Plaintiff who was angry because money which had been mistakenly paid into her account due to the payroll error was deducted by Defendant. For present purposes, however, the court accepts Plaintiff's version of events as true.

3

mere coincidence that the review of the Human Resources Department happened to occur just after Plaintiff requested FMLA leave.

While there is support for Defendant's claim that the company had been downsizing in the few years preceding Plaintiff's termination, the specific timing and nature of the position eliminations raises some doubts as to whether Plaintiff's position was reviewed and eliminated as part of that downsizing. First, all other positions cut were eliminated between 2003 and 2005. Second, the majority of the jobs which were eliminated were manufacturing rather than administrative positions. Only one or two other administrative positions were eliminated and those cuts were made no later than 2004. The only position eliminated in 2006 was Plaintiff's. No other job cuts of any kind have followed Plaintiff's termination. Depos. of Wedemyer at 84-87. The decision to create a new position for Maiden within the same department only a few months earlier also casts doubt on Defendant's claim that it was in the process of a systematic streamlining of the company.

## DISCUSSION

### I.  Defendant's Objections

Defendant objects to the Report to the extent it recommends that the motion for summary judgment be denied in any respect. As a threshold matter, the court notes that Defendant repeatedly refers to the Magistrate Judge's "conclusions" that Defendant had committed various wrongs. The Report makes no such conclusions. Rather, it recommends only that this court find *sufficient evidence* to present a jury question on the relevant issues.

#### A.  FMLA Retaliation Claim

The central facts set out above are sufficient to raise a jury question as to whether Plaintiff was retaliated against for exercising rights under the FMLA. It is undisputed that Plaintiff exercised

4

those rights and that she was terminated during the period of her approved FMLA leave. The exceptionally close temporal proximity between her initial exercise of her FMLA rights and the decision to eliminate her position supports the causation element of the prima facie case.

While Defendant has proffered a non-discriminatory reason for the elimination of Plaintiff's position, there is evidence from which a jury could find the proffered reason pretextual. Specifically, Defendant's claim that Plaintiff's position was eliminated as part of an ongoing strategic plan to make the business more efficient is subject to challenge in light of Defendant's recent creation of a new position in the same department (Maiden's position), the significant time gaps between the elimination of other positions and the elimination of Plaintiff's position, and the absence of any other similar decisions following the decision to eliminate Plaintiff's position. Taken together, these facts are sufficient to raise a jury issue as to whether Defendant's stated reason for eliminating Plaintiff's position is pretextual.

Defendant's objections focus on what it characterizes as "speculative" or "unsupported" evidence considered by the Magistrate Judge in support of this claim. For example, Defendant notes that the Magistrate Judge considered Plaintiff's characterization of her supervisor's comments relating to Plaintiff's request for leave under the FMLA as being "just offensive the way it was put" and Plaintiff's claim that the manner of the supervisor's comments made her feel guilty. The undersigned agrees that the supervisor's comments and Plaintiff's reaction to them would not, alone, be enough to present a genuine issue of material fact as to Defendant's motivation in eliminating Plaintiff's position. They may, however, be of some relevance. In any event, as explained above, this evidence is not necessary to a finding that Plaintiff has presented a genuine issue of material fact for trial.

Defendant's other objections to the adequacy of the evidence fail for the same reason: they focus on peripheral matters such as the telephone call relating to the payroll error. Accepting Plaintiff's version of what transpired as true may provide some additional support for the view that her supervisor was angry at her and blamed her for a payroll error which occurred while Plaintiff was on FMLA leave (possibly linking the error to the fact the leave was taken).[3] This evidence is, however, unnecessary to support Plaintiff's claims for the reasons set forth above.[4]

### B.     FMLA Interference Claim

Plaintiff's position was eliminated and she was terminated during the approved period of her FMLA leave. This resulted in Defendant's inability to restore Plaintiff to her former position. While this might be best presented as a retaliation claim, it appears, at present, to also support a claim for interference.

As discussed above, there are genuine issues of material fact as to Defendant's motivation for the elimination of Plaintiff's position. One reasonable inference from the central facts discussed above is that Defendant acted in response to Plaintiff's decision to take FMLA leave. The undersigned finds this evidence sufficient to preclude summary judgment on the interference claim.

---

[3] As noted above, Plaintiff and her former supervisor disagree as to who initiated the call and which of them was angry. For purposes of this motion, the court must accept Plaintiff's version as correct.

[4] The court agrees that the Magistrate Judge may have overstated the evidence as to whether the company president had, prior to Plaintiff taking FMLA leave, expressed frustration with other employees being out on extended leave while continuing to be paid. For purposes of this motion, therefore, the court assumes that the evidence would not support a finding that the company President had expressed such animus. This assumption does not, however, change the result for the reasons explained above.

### C. Race Discrimination Retaliation Claim

Accepting Plaintiff's deposition testimony as true, she complained in or around August 2005 that Maiden was hired at the same rate then being paid to Plaintiff. There are two ways to characterize this complaint. It might be characterized as a challenge to *equal* pay at a specific point in time, which would not support a claim of discrimination. Alternatively, it might be characterized as a challenge to *disparate treatment* in the terms of hiring. This is because Plaintiff had been hired at a much lower rate and had been required to "earn" the two raises which brought her to her then-current pay status through six-months of (apparently) exemplary work. This might reasonably have led Plaintiff to believe that she had a valid a claim of discrimination. Plaintiff testified that she complained about the pay issue and that, in doing so, she made a comment suggesting that skin color may have played a part in the pay decision. In light of this testimony, the jury might conclude that Plaintiff reasonably believed she had a valid discrimination claim and that she made a complaint which her supervisor construed as a claim of race or skin-color based discrimination.

Shortly after making this complaint, Plaintiff sought an opportunity to meet with the company president. The president was Plaintiff's second-level supervisor and, therefore, the only person above her supervisor to whom she might complain about discrimination. Plaintiff did not indicate the purpose of the meeting. She testified, however, that she intended to complain about Maiden's pay. The request for a meeting was denied by the company president, who referred Plaintiff back to her supervisor. Plaintiff did not advise her supervisor of the purpose of the requested meeting. A jury might, nonetheless, find that the supervisor correctly assumed that Plaintiff intended to take her skin color-based pay complaint to a higher level.[5]

---

[5] Plaintiff's supervisor denies connecting Plaintiff's request for the meeting with the president with Plaintiff's complaint about Maiden's rate of pay. The supervisor also denies that Plaintiff referenced skin color as a concern when Plaintiff raised the pay issue. Thus, accepting the

A jury might also find that animus relating to Plaintiff's initial complaint and Plaintiff's attempt to take it to a higher level continued to fester and motivated the supervisor to give Plaintiff lower ratings on some portions of her December 2005 performance evaluation. This is because (according to Plaintiff) the supervisor stated that the lower ratings were given because of Plaintiff's reaction to Maiden's hiring. Assuming the jury also accepted Plaintiff's testimony that the pay complaint included a reference to skin-color, the jury might conclude that the underlying (and continuing) animus resulted from Plaintiff's August 2005 skin-color complaint. If it is reasonable to conclude that animus flowing from events in August 2005 continued to influence the supervisor's attitude toward and rating of Plaintiff in December 2005, it is also reasonable to conclude that the same animus remained present and may have influenced the January 2006 decision to eliminate Plaintiff's position, absent some other reasonable explanation of why Plaintiff was terminated.[6]

For the reasons explained in the preceding section, Defendant's proffered reason for eliminating Plaintiff's position is subject to challenge. That is, the timing of the elimination of Plaintiff's position relative to other position eliminations and the very recent creation of a new position in the same department raise doubts as to whether Plaintiff's position was eliminated as part

---

supervisor's version of events, she would have had no reason to expect that Plaintiff intended to complain to the president about a race-discrimination claim because she was not aware of any race-based concern. If, on the other hand, the jury accepts Plaintiff's testimony that she referenced skin color in complaining to her supervisor about the pay issue, it might also reject the supervisor's claim that she did not make any connection between the pay complaint and the request to see the President. While perhaps not strong evidence, this may support an inference that the supervisor was both aware of Plaintiff's initial skin-color complaint and her intent to carry it further.

[6] In addressing Defendant's objections, the court has disregarded certain negative inferences which may have been drawn by the Magistrate Judge as to this claim. Specifically, the court has assumed that Maiden and Plaintiff were considered by Defendant to have roughly the same total tenure when the decision was made to eliminate Plaintiff's position, thus negating any inference that a lower tenured employee was retained in preference to one with greater tenure. The court has also drawn no negative inference from Defendant's failure to affirmatively seek Plaintiff out to offer her Maiden's position when Maiden resigned several months after Plaintiff was terminated.

of a strategic plan to reorganize for greater efficiency.

In sum, while the evidence of retaliatory motive is not strong, the court finds it sufficient at this stage to allow Plaintiff's Title VII and Section 1981 retaliation claims to proceed to trial.

## II.     Plaintiff's Objections

Plaintiff objects to the recommendations that summary judgment be granted as to her claims for breach of contract and violation of the South Carolina Wage Payment Act. Both claims are based on Defendant's failure to pay Plaintiff three months severance as required by her employment agreement. As explained in the Report, Plaintiff cannot succeed on either claim because she failed to execute a release which was a prerequisite to payment of the severance.

Plaintiff argues that she should not be precluded from recovery on this basis because the release which Defendant requested she sign was overbroad. The claim of overbreadth is not without support. Plaintiff did not, however, raise this concern when she first declined to sign the release. Instead, she objected to Defendant's indication that it would provide only a neutral reference and asked for a significantly greater payment than was required by her contract. Much later, she did write to Defendant stating in a one line letter that she released her claims. Even then, she did not indicate specific objections to the release proposed by Defendant and did not indicate a willingness to sign any release other than the one line release found in her letter.[7] Defendant responded to this letter asking that Plaintiff sign the original release and offering a copy. Plaintiff did not respond to this letter. Thus, it does not appear that Plaintiff ever made Defendant aware of her now-claimed concerns with overbreadth of the release as drafted by Defendant.

---

[7] While Defendant's proposed release may have been overbroad, the language in Plaintiff's offered release would reasonably have been deemed overly narrow.

9

Under these circumstances, the court concludes as a matter of law that Plaintiff failed to satisfy a condition precedent to payment of any severance benefits. For this and additional reasons set forth in the Report, the court grants the motion for summary judgment as to both the breach of contract and Wage Payment Act claims.

## TRIAL SCHEDULE

The pretrial schedule for the surviving claims shall be as follows:

1. No later than **January 7, 2008**, the parties shall advise the court as to the anticipated length of trial.

2. Mediation, pursuant to Local Civil Rules 16.04 – 16.12, shall be completed in this case on or before **January 24, 2008.** *See* Standing Order to Conduct Mediation 4:00-mc-5001, which sets forth mediation requirements and is found on the court's website under Judge Currie's forms (http://www.scd.uscourts.gov).

3. No later than **January 28, 2008**, the parties shall file and exchange Fed. R. Civ. P. 26(a)(3) pretrial disclosures. Within fourteen (14) days thereafter, a party shall file and exchange Fed. R. Civ. P. 26(a)(3) objections, any objections to use of a deposition designated by another party and any deposition counter-designations under Fed. R. Civ. P. 32(a)(4). *See* Local Civil Rule 30.03(J) (video deposition additional requirements).

4. Motions in limine must be filed at least three weeks prior to jury selection.

5. Parties shall furnish the court pretrial briefs five (5) business days prior to the date set for jury selection (Local Civil Rule 26.05).[8] Attorneys shall meet at least five (5) business days prior to the date set for submission of pretrial briefs for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07.

6. This case shall be called for trial during the **February 2008** term of court, with jury selection set for **February 22, 2008.** A tentative trial date will, if possible, be set on or before the date for jury selection.

---

[8] Judge Currie requires that pretrial briefs be filed with the Clerk of Court as part of the public record and served on opposing parties.

**CONCLUSION**

For the reasons set forth above, the court adopts all recommendations in the Report. The court further adopts the reasoning set forth in the Report except as modified by this order. The court, therefore, confirms the withdrawal of the disparate treatment claim (as distinct from the retaliation claim), and grants the motion for summary judgment as to the breach of contract and Wage Payment Act claims. The court denies the motion for summary judgment in all other respects, leaving the race-based retaliation claims (asserted under Title VII and Section 1981) and the FMLA-based claims (for retaliation and interference) to proceed to trial under the schedule set forth above.

IT IS SO ORDERED.

                                      s/ Cameron McGowan Currie
                                      CAMERON MCGOWAN CURRIE
                                      UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 19, 2007

C:\Documents and Settings\Glp59\Local Settings\Temp\notesE1EF34\06-1648_v_Bowman_v_holopack_order_adopting_R&R.wpd